IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| James Allan Gunnells,                                ) | Case No. 8:14-cv-01978-MGL-JDA |
| )                                                                 | |
| Plaintiff,        ) | |
| )                                                                 | |
| v.                                                                ) | **REPORT AND RECOMMENDATION** |
| )                                                                 | **OF MAGISTRATE JUDGE** |
| Jonathan Goodman, Officer Dillman, James ) | |
| Jenkins, Ms. Sharon Patterson,                ) | |
| )                                                                 | |
| Defendants.    ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 24.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action on May 15, 2014,[1] against Defendants Jonathan Goodman ("Goodman"), Officer Dillman ("Dillman"), James Jenkins ("Jenkins"), and Ms. Sharon Patterson ("Patterson"; collectively "Defendants"), alleging Defendants violated his Eighth Amendment rights. [Doc. 1.] Defendants filed their motion for summary judgment on September 29, 2014. [Doc. 24.] By Order filed September 30, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, his Complaint was filed on May 15, 2014. [Doc. 1-1 (envelope stamped as received by the prison mailroom on May 15, 2014).]

adequately respond to the motion. [Doc. 26.] Plaintiff filed a response in opposition to the motion on October 14, 2014. [Doc. 30.] On October 24, 2014, Defendants filed a reply and a supplement to their motion for summary judgment. [Docs. 32, 33.] Plaintiff filed a sur reply on March 25, 2015.[2] [Doc. 38.] The motion is now ripe for review.

## BACKGROUND[3]

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Lee Correctional Institution ("Lee") [Doc. 1 at 3]; Plaintiff is currently housed at Perry Correctional Institution [*id.* at 2]. Plaintiff alleges that on November 17, 2010, his cellmate, Terrion Warren ("Warren"), was taken to a disciplinary hearing in the Darlington Unit's Lieutenant office.[4] [*Id.* at 3.] Warren's charges were heard by Patterson, the hearing officer. [*Id.*] Warren was found guilty and walked out of the hearing "making indirect comments" and went back into the cell he shared with Plaintiff. [*Id.*] Plaintiff then went into his hearing. [*Id.*] Once inside the Darlington Unit's Lieutenant office, Patterson, Goodman, and Jenkins told Plaintiff that Warren had said he would stab Plaintiff if he returned to the cell. [*Id.*] Plaintiff alleges they were discussing the matter in a joking manner. [*Id.*] Patterson asked Plaintiff if he wanted to come with her, and Plaintiff asked her what she meant. [*Id.*] Patterson told Plaintiff, "If I were you[,] I wouldn't

---

[2]Although untimely, the Court has taken into consideration Plaintiff's sur reply in issuing this Report and Recommendation.

[3]The facts included in the Background section are taken directly from Plaintiff's Complaint.

[4]In their memorandum in support of their motion for summary judgment, Defendants state that Plaintiff and Warren were both charged with possession of a weapon and possession of a cell phone after a routine search of their cell. [Doc. 24-1 at 3.]

2

go back in that room." [*Id.*] Plaintiff maintains that because they were talking about the situation in a joking manner, he did not take them seriously and walked back to his cell.[5] [*Id.*]

Once Plaintiff returned to his cell, he began talking to his co-defendant through the vents. [*Id.*] Dillman locked Plaintiff and Warren inside the cell. [*Id.* at 3–4.] While Plaintiff was talking to his co-defendant, Warren tried to throw boiling liquid on Plaintiff. [*Id.* at 4.] They began tussling, and Plaintiff noticed Warren had a shank in his hand. [*Id.*] Warren then began stabbing Plaintiff. [*Id.*] Plaintiff contends that Dillman was standing at the door watching the incident. [*Id.*] Dillman then entered the cell, walked back out, and locked the door to the cell. [*Id.*] Dillman told Plaintiff and Warren to break it up but did not administer chemical munitions or call for backup. [*Id.*] A few of the other inmates told Dillman to get on his radio and call first response. [*Id.*] Even after he had been told what to do, Dillman stood and watched Plaintiff being attacked for at least two minutes before he made the call for assistance. [*Id.*]

Once backup officers arrived and administered chemical munitions, Dillman also administered chemical munitions. [*Id.*] Eventually, the situation was brought under control, and Plaintiff was helicoptered to Richland County Memorial Hospital. [*Id.*] Plaintiff maintains that only one officer was on the wing and the security was inadequate. [*Id.* at 5.] Plaintiff alleges that after he was stabbed, Goodman failed to properly secure Plaintiff's personal property and, as a result, several of his belongings went missing. [*Id.*] Plaintiff further

---

[5]Plaintiff alleges that he and Warren had been having problems and they had both written requests to Goodman asking to change cells prior to these events. [Doc. 1 at 3.] Goodman told them both that he would talk to classification and separate them but never did. [*Id.*]

alleges that as a result of Defendants' deliberate indifference to his safety, he suffered stab wounds; second and third degree burns on his shoulder, back, and neck; a dental impression scar on his arm; a cut and scar on his eyeball; nerve damage; and a psychological condition that requires medication. [*Id.*]

Plaintiff seeks a declaration that Defendants' acts and omission violated his constitutional rights; this relief is sought against Defendants in their official capacities. [*Id.* at 6.] Plaintiff further requests replacement or reimbursement for his personal property; $75,000 in compensatory damages against each Defendant, jointly and severally, only in their individual capacities; $50,000 in punitive damages against each Defendant, jointly and severally, only in their individual capacities; a jury trial; recovery of the costs of this action in Defendants' individual capacities; and any other relief this Court deems just, proper, and equitable. [*Id.* at 5–6.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions

never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

5

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Among other arguments, Defendants contend they are entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies before filing this action. [Doc. 33.] Defendants have attached two sets of Step 1 and Step 2 grievances Plaintiff filed related to this action [Doc. 32-1 at 4–9]; however, they argue that Plaintiff was required to appeal the denial of his Step 2 grievances to the South Carolina Administrative Law Court ("ALC"). [Doc. 33 at 5.] Plaintiff argues he was not required to exhaust his administrative remedies beyond his Step 2 grievances. [Doc. 38 at 1.]

Section 1997e(a) of the PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process); *but see, Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint

containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson*, 407 F.3d at 681. However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Defendants have summarized the parameters of the SCDC grievance policy at the time Plaintiff filed his grievances as follows:

(1) an inmate must fill out a Form 10–5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;

(2) the Warden designee has ten (10) working days from the time the grievance is presented to put it into SCDC's automated system and provide the grievance to the Inmate Grievance Coordinator;

(3) upon receipt of a grievance, the Inmate Grievance Coordinator will, within ten (10) working days, complete the additional text for the grievance into the CRT screen and will then attempt to resolve the matter;

(4) the Warden must respond to the grievance in writing within forty (40) days from the date the grievance was formally entered into the OMS system by the Institutional Grievance Coordinator;

(5) the response will be served by the Institutional Inmate Grievance Coordinator within five (5) working days;

(6) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and

(7) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance from the date the IGC receives it to respond to the Step 2 Grievance; and

(8) the Response to the Step 2 Grievance must be served in the inmate within five (5) working days.

[Doc. 32 at 6–7 (citing SCDC Policy GA–01.12, October 1, 2010).]

Whether Plaintiff exhausted his administrative remedies with respect to his claims is unclear. Plaintiff alleges two instances where Defendants failed to protect him. First, Patterson, Goodman, and Jenkins heard Warren make threats against Plaintiff but joked about it, did not take any action to protect Plaintiff, and allowed Plaintiff to return to his cell with Warren. [Docs. 1 at 3; 30 at 4–6.] Second, Dillman saw Warren attacking Plaintiff but failed to act to stop it. [Docs. 1 at 4; 30 at 6–7.] Upon its review of the record, the Court cannot determine whether Plaintiff has exhausted his administrative remedies with respect

to his claim that Patterson, Goodman, and Jenkins were deliberately indifferent to his safety because on the record before the Court, it appears that Plaintiff failed to grieve this claim at all.  Although Defendants did not raise this particular exhaustion argument in their motion for summary judgment, before reaching the merits of Plaintiff's claims, the Court finds it necessary to determine whether Plaintiff failed to exhaust his administrative remedies with respect to this claim.  *See Bellamy v. Eagleton*, C/A No. 8:10-01103-HFF, 2011 WL 4527378, at * 1 (D.S.C. Sept. 29, 2011); *see also Anderson*, 407 F. 3d at 682–83 (holding that, except in rare circumstances where failure to exhaust is apparent from the face of the complaint, district courts may raise the issue of exhaustion of remedies sua sponte as long as they provide petitioners an opportunity to respond.).  Accordingly, the Court recommends denying Defendant's motion for summary judgment without prejudice and with leave to refile so as to provide the parties with an opportunity to address whether Plaintiff exhausted his administrative remedies with respect to his claim against Patterson, Goodman,[6] and Jenkins.[7]

---

[6] The Court notes that Plaintiff filed a Step 1 and Step 2 grievance against Goodman alleging he failed to separate Plaintiff and Warren when they had requested room changes. [Doc. 32-1 at 4–6.]  However, neither party has submitted a grievance with respect to placing Plaintiff back in the cell with Warren following the disciplinary hearing.

[7] The Court is aware that Defendants have argued that Plaintiff failed to exhaust his administrative remedies because he failed to appeal the denial of his Step 2 grievances to the ALC.  However, based on its initial review of the issue, the Court does not believe this argument will prevail because the claim at issue is regarding Plaintiff's conditions of confinement.  *See Pearson v. Stevenson*, No. 9:14-cv-454-RBH-BM, 2015 WL 733814, at *5 (D.S.C. Feb. 20, 2015) (finding that, in order to exhaust his grievances regarding a disciplinary conviction, a plaintiff would have had to appeal his disciplinary conviction to the ALC (citations omitted)); *see also Lowry v. Davis*, C/A No. 2:06-509-TLW-RSC, 2006 WL 3759828 at *2 (D.S.C. Dec. 18, 2006) ("It is not necessary for the inmate to file an appeal with the state ALJ Division for matters pertaining to prisoner's conditions of confinement."). It is not in the best interests of the Court or the parties to examine the issue of exhaustion

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be DENIED without prejudice and with leave to refile. If the District Court adopts this recommendation, this Court recommends Defendants be directed (1) to address whether Plaintiff exhausted his administrative remedies with respect to his claims against Patterson, Goodman, and Jenkins and (2) include their alternative arguments presented in their first motion for summary judgment. Additionally, the Court recommends that Defendants be directed to file their new motion within 30 days of the date of the District Court's Order adopting this Report and Recommendation.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

June 23, 2015
Greenville, South Carolina

---

in a piecemeal fashion. Moreover, in the interest of judicial economy, the Court should examine whether claims are procedurally barred before addressing the merits of Plaintiff's claims.