IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| James Allan Gunnells, | ) | Case No. 8:14-cv-01978-MGL-JDA |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Plaintiff, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| v. | ) | |
| | ) | |
| Jonathan Goodman, Officer Dillman, | ) | |
| James Jenkins, Ms. Sharon Patterson, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a second motion for summary judgment filed by

Defendants. [Doc. 41.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local

Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial

matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations

to the District Court.

Plaintiff, proceeding pro se, filed this action on May 15, 2014,[1] against Defendants

Jonathan Goodman ("Goodman"), Officer Dillman ("Dillman"), James Jenkins ("Jenkins"),

and Ms. Sharon Patterson ("Patterson"; collectively "Defendants"), alleging Defendants

violated his Eighth Amendment rights. [Doc. 1.] Defendants filed a motion for summary

judgment on September 29, 2014. [Doc. 24.] The motion for summary judgment was

denied with leave to refile on July 14, 2014. [Doc. 45.] Defendants filed their second

motion for summary judgment on July 10, 2015. [Doc. 41.] By Order filed July 13, 2015,

_____

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, the Complaint was filed on May 15, 2014. [Doc. 1-1 (envelope stamped as
received by the prison mailroom on May 15, 2014).]

pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion.  [Doc. 43.]  Plaintiff filed a response in opposition to the motion on August 24, 2015.  [Doc. 50.]  On September 3, 2015, Defendants filed a reply.[2] [Doc. 52.]  The motion is now ripe for review.

## BACKGROUND[3]

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Lee Correctional Institution ("Lee") [Doc. 1 at 3]; Plaintiff is currently housed at Perry Correctional Institution [*id.* at 2].  Plaintiff alleges that on November 17, 2010, his cellmate, Terrion Warren ("Warren"), was taken to a disciplinary hearing in the Darlington Unit's Lieutenant office.[4]  [*Id.* at 3.]  Warren's charges were heard by Patterson, the hearing officer.  [*Id.*]  Warren was found guilty and walked out of the hearing "making indirect comments" and went back into the cell he shared with Plaintiff.  [*Id.*]  Plaintiff then went into his hearing.  [*Id.*]  Once inside the Darlington Unit's

---

[2]Plaintiff filed a second response in opposition to the second motion for summary judgment on September 8, 2015 [Doc. 54], and Defendants filed a second reply on September 15, 2015 [Doc. 55].  Upon review, the second response in opposition appears to be essentially a rewritten version of the first response in opposition with no additional legal arguments.  [*Compare* Doc. 50 *with* Doc. 54.]  Because Defendants' reply to the second response in opposition also fails to provide any additional facts or arguments, the Court will reference only Plaintiff's first response in opposition [Doc. 50] and Defendants' reply to that document [Doc. 52].

[3]The facts included in the Background section are taken directly from Plaintiff's Complaint.

[4]In their memorandum in support of their initial motion for summary judgment, Defendants state that Plaintiff and Warren were both charged with possession of a weapon and possession of a cell phone after a routine search of their cell.  [Doc. 41-1 at 3.]

Lieutenant office, Patterson, Goodman, and Jenkins told Plaintiff that Warren had said he would stab Plaintiff if he returned to the cell. [*Id.*] Plaintiff alleges they were discussing the matter in a joking manner. [*Id.*] Patterson asked Plaintiff if he wanted to come with her, and Plaintiff asked her what she meant. [*Id.*] Patterson told Plaintiff, "If I were you[,] I wouldn't go back in that room." [*Id.*] Plaintiff maintains that because they were talking about the situation in a joking manner, he did not take them seriously and walked back to his cell.[5] [*Id.*]

Once Plaintiff returned to his cell, he began talking to his co-defendant through the vents. [*Id.*] Dillman locked Plaintiff and Warren inside the cell. [*Id.* at 3–4.] While Plaintiff was talking to his co-defendant, Warren tried to throw boiling liquid on Plaintiff. [*Id.* at 4.] They began tussling, and Plaintiff noticed Warren had a shank in his hand. [*Id.*] Warren then began stabbing Plaintiff. [*Id.*] Plaintiff contends that Dillman was standing at the door watching the incident. [*Id.*] Dillman then entered the cell, walked back out, and locked the door to the cell. [*Id.*] Dillman told Plaintiff and Warren to break it up but did not administer chemical munitions or call for backup. [*Id.*] A few of the other inmates told Dillman to get on his radio and call first response. [*Id.*] Even after he had been told what to do, Dillman stood and watched Plaintiff being attacked for at least two minutes before he made the call for assistance. [*Id.*]

Once backup officers arrived and administered chemical munitions, Dillman also administered chemical munitions. [*Id.*] Eventually, the situation was brought under control,

---

[5]Plaintiff alleges that he and Warren had been having problems and they had both written requests to Goodman asking to change cells prior to these events. [Doc. 1 at 3.] Goodman told them both that he would talk to classification and separate them but never did. [*Id.*]

and Plaintiff was helicoptered to Richland County Memorial Hospital. [*Id.*] Plaintiff maintains that only one officer was on the wing and the security was inadequate. [*Id.* at 5.] Plaintiff alleges that after he was stabbed, Goodman failed to properly secure Plaintiff's personal property and, as a result, several of his belongings went missing. [*Id.*] Plaintiff further alleges that as a result of Defendants' deliberate indifference to his safety, he suffered stab wounds; second and third degree burns on his shoulder, back, and neck; a dental impression scar on his arm; a cut and scar on his eyeball; nerve damage; and a psychological condition that requires medication. [*Id.*]

Plaintiff seeks a declaration that Defendants' acts and omission violated his constitutional rights; this relief is sought against Defendants in their official capacities. [*Id.* at 6.] Plaintiff further requests replacement or reimbursement for his personal property; $75,000 in compensatory damages against each Defendant, jointly and severally, only in their individual capacities; $50,000 in punitive damages against each Defendant, jointly and severally, only in their individual capacities; a jury trial; recovery of the costs of this action in Defendants' individual capacities; and any other relief this Court deems just, proper, and equitable. [*Id.* at 5–6.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction

4

means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v.*

5

*Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff

6

complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v.

*Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When

determining whether a genuine issue has been raised, the court must construe all inferences

and ambiguities against the movant and in favor of the non-moving party.  *United States v.*

*Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating

to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the

non-moving party, to survive the motion for summary judgment, may not rest on the

allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at

252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude

7

granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants contend they are entitled to summary judgment because this action is barred by the statute of limitations, Plaintiff has failed to exhaust his administrative remedies, Plaintiff has failed to demonstrate that his constitutional rights were violated, Defendants are entitled to qualified immunity, and Plaintiff does not have a constitutional claim for lost property.[6] [Doc. 41-1.] The Court will address each argument.

---

[6]Defendants also argue they are entitled to immunity in their official capacities pursuant to the Eleventh Amendment. [Doc. 41-1 at 30.] In his response in opposition to

**Statute of Limitations**

Defendants argue that Plaintiff's claims are barred by the statute of limitations. [Doc. 41-1 at 8–15.] Defendants assert that the SCDC grievance policy allows an institution 135 days from the date that an inmate files his Step 1 grievance to complete the grievance procedure and, at that time, an inmate may consider his administrative remedies exhausted and the statute of limitations begins to run. [*Id.* at 14.] Defendants argue that because Plaintiff filed his last Step One grievances regarding the attack by Warren on November 30, 2010, the statute of limitations was tolled for 135 days, began to run on April 14, 2011, and expired three years later on April 14, 2014. [*Id.*] Accordingly, Plaintiff's Complaint, filed on May 15, 2014,[7] was filed out of time. [*Id* at 15.] Plaintiff argues that the statute of limitations should be tolled because of SCDC's delayed response to his grievances; he contends that because he did not receive notice that SCDC had denied his Step 2 grievance until May 1, 2013, his Complaint is timely. [Doc. 50 at 2.] The Court agrees that the statute of limitations was tolled during the time Plaintiff waited for a reply to his grievances from SCDC.[8]

the second motion for summary judgment, Plaintiff states that he is not seeking recovery against Defendants in their official capacities. [Doc. 50 at 10.] Thus, any claims against Defendants in their official capacities should be dismissed.

[7]Defendants state that Plaintiff's Complaint was filed on May 19, 2014 [Doc. 41-1 at 15]; however, as explained supra, the Court considers a prisoner's complaint filed at the moment it is delivered to prison authorities for forwarding to the court pursuant to *Houston v. Lack*, 487 U.S. 266, 270 (1988).

[8]The Court is aware that there is disagreement within the District of South Carolina as to how long the statute of limitations should be tolled in these circumstances. *See Peoples v. Rogers*, C/A No. 8:10-24-CMC, 2010 WL 424201, at *2 (D.S.C. Feb. 1, 2010) (holding that "tolling applies to the period during which [p]laintiff was exhausting his administrative remedies"); *Saucillo v. Samuels*, Civil Action No. 0:12-cv-240-TMC, 2013 WL 360258, at *2 (D.S.C. Jan. 30, 2013) (holding the same); *but see Kelly v. White*, C/A No. 4:10-982-JFA, 2011 WL 939015, at * 3 (D.S.C. Mar. 16, 2011) (finding that the plaintiff was

Because § 1983 does not specify a statute of limitations, the Supreme Court has counseled that, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (footnote omitted); *see Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period . . . ." (citations omitted)). In South Carolina, the residual statute of limitations for personal injury actions is three years. S.C. Code Ann. § 15-3-530. The limitations period of S.C. Code Ann. § 15-3-530 begins to run when the plaintiff "knew or by the exercise of reasonable diligence should have known that he had a cause of action." *Gibson v. Bank of Am., N.A.*, 680 S.E.2d 778, 782 (S.C. Ct. App. 2009) (emphasis omitted). The test is an objective one, *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 386 S.E.2d 798, 800 (S.C. Ct. App. 1989) (citing *Rogers v. Efird's Exterminating Co., Inc.*, 325 S.E.2d 541, 542 (S.C. 1985)); the limitations period begins to run when "the facts and circumstances of an injury would put a person of common knowledge and experience on notice . . . that some claim against another party might exist," *Snell v. Columbia Gun Exchange, Inc.*, 278 S.E.2d 333, 334 (S.C.1981) (per curiam).

Just as § 1983 incorporates the applicable state statute of limitations, § 1983 actions also incorporate the relevant state tolling rules. *Wilson v. Garacia*, 471 U.S. 261, 269 n. 17 (1985), *superceded by statute on other grounds as recognized in Jones v. R.R. Donnelley*

---

deemed to have exhausted his administrative remedies 114 days after he filed his Step 1 grievance and additional tolling was not applicable). However, as explained, infra, the undersigned has concluded that the statute of limitations should be tolled in the present case.

& Sons Co., 541 U.S. 369, 379 (2004); *Lake v. Arnold*, 232 F.3d 360,368 (3rd Cir. 2000); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999); *see Hardin v. Straub*, 490 U.S. 536, 543–44 (1989). The Supreme Court of South Carolina has held that the doctrine of equitable tolling may be applied where it is justified under the circumstances but "should be used sparingly and only when the interests of justice compel its use." *Hooper v. Ebenezer Sr. Serv. & Rehab. Ctr.*, 687 S.E.2d 29, 33 (S.C. 2009). Further, "[t]he party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use." *Id.* at 32. Specifically, the South Carolina tolling statute states,

> When the commencement of an action shall be stayed by injunction or statutory prohibition that time of the continuance of the injunction or prohibition shall not be part of time limited for the commencement of the action.

S.C. Code Ann. § 15-3-100. Accordingly, a federal court "must toll the statute of limitations if a 'statutory prohibition' exists which prevents a plaintiff's cause of action." *Peoples*, 2010 WL 424201, at *2.

As discussed in more detail, infra, pursuant to 42 U.S.C.A. § 1997(e), inmates are required to exhaust their administrative remedies before bringing a § 1983 action in federal court. "Administrative law requires proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 81 (2006) (internal quotations marks and citation omitted). The Fourth Circuit Court of Appeals has not ruled on the relationship between § 1997(e) and the South Carolina tolling statute; however, other circuits have determined that the statute of limitations should be tolled while inmates exhaust their administrative remedies. *See, eg.*, *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153,

157–59 (5th Cir. 1999). Accordingly, because Plaintiff did not receive a decision on his Step 2 grievance until May 1, 2013, the Court finds his Complaint was timely filed on May 15, 2014.

**Exhaustion of Administrative Remedies**

Defendants argue Plaintiff has failed to exhaust his administrative remedies with respect to Goodman, Patterson, and Jenkins and that his grievance concerning Dillman, at most, alleges negligence.[9] [Doc. 41-1 at 15–19.] Defendants have attached two sets of Step 1 and Step 2 grievances that Plaintiff filed related to the facts alleged in this action.[10] [Doc. 41-3 at 4–9.] Plaintiff agrees that these were the only grievances filed that relate to the present action; however, he contends he has sufficiently complied with the prison procedure pertaining to grievances. [Doc. 50 at 5–9.]

Section 1997e(a) of the PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

---

[9]In his response in opposition to the second motion for summary judgment, Plaintiff states that he "agrees and consents to having [Jenkins and Patterson] dismissed from the Complaint" because he failed to exhaust his administrative remedies with respect to these Defendants [Doc. 50 at 6]; thus, the Court recommends dismissing Jenkins and Patterson from this action and will address Defendants' arguments with respect to Goodman and Dillman.

[10]In their second motion for summary judgment, Defendants also argue Plaintiff failed to exhaust his administrative remedies because he did not file an action with the South Carolina Administrative Law Court [Doc. 41-1 at 19]; however, they explicitly withdraw this argument in their reply [Doc. 52 at 5].

> Beyond doubt, Congress enacted § 1997e(a) to reduce the
> quantity and improve the quality of prisoner suits; to this
> purpose, Congress afforded corrections officials time and
> opportunity to address complaints internally before allowing the
> initiation of a federal case. In some instances, corrective action
> taken in response to an inmate's grievance might improve
> prison administration and satisfy the inmate, thereby obviating
> the need for litigation. In other instances, the internal review
> might filter out some frivolous claims. And for cases ultimately
> brought to court, adjudication could be facilitated by an
> administrative record that clarifies the contours of the
> controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted).

Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The

exhaustion requirement applies even if the relief sought in the civil action is not available in

the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner

must comply with his prison's grievance procedure to exhaust his administrative remedies.

*Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules . . . ." *Woodford*, 548 U.S. at 90. An

inmate's failure to "properly take each step within the administrative process . . . bars, and

does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th

Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding

dismissal of an inmate's complaint because the inmate failed to proceed beyond the first

step in the administrative grievance process); *but see, Jones*, 549 U.S. at 219–24 (rejecting

"total exhaustion rule" and holding that when presented with a complaint containing

exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson*, 407 F.3d at 681. However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Defendants have summarized the parameters of the SCDC grievance policy at the time Plaintiff filed his grievances as follows:

> (1)     an inmate must fill out a Form 10–5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;

14

(2)     the Warden designee has ten (10) working days from the time the grievance is presented to put it into SCDC's automated system and provide the grievance to the Inmate Grievance Coordinator;

(3)     upon receipt of a grievance, the Inmate Grievance Coordinator will, within ten (10) working days, complete the additional text for the grievance into the CRT screen and will then attempt to resolve the matter;

(4)     the Warden must respond to the grievance in writing within forty (40) days from the date the grievance was formally entered into the OMS system by the Institutional Grievance Coordinator;

(5)     the response will be served by the Institutional Inmate Grievance Coordinator within five (5) working days;

(6)     the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and

(7)     a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance from the date the IGC receives it to respond to the Step 2 Grievance; and

(8)     the Response to the Step 2 Grievance must be served in the inmate within five (5) working days.

[Doc. 41-1 at 9–10 (citing SCDC Policy GA–01.12, October 1, 2010).]

### *Goodman*

In his grievance concerning his allegations against Goodman, Plaintiff asserted that while he and Goodman were waiting to go into the disciplinary hearing, Plaintiff told Goodman that there would be problems with his roommate because of the disciplinary proceedings. [Doc. 41-3 at 4.] He further alleged that Goodman knew that Plaintiff and Warren were having problems living together and had promised to move one of them but never followed up on it. [*Id.*] Plaintiff contended that the assault could have been prevented if Goodman had moved Plaintiff or Warren. [*Id.*] In his Complaint, Plaintiff alleges that once he was in the disciplinary hearing, Goodman and others told him that Warren had said he

15

would stab Plaintiff and laughed about it. [Doc. 1 at 3.] Plaintiff also contends that Goodman knew he was having problems with Warren and had promised to separate them but never did. [*Id.*]

The Court finds that Plaintiff has exhausted his administrative remedies with respect to his allegations against Goodman in that he has sufficiently alleged that Goodman knew Plaintiff and Warren were not getting along and had asked to be separated and that he had knowledge on the day of the attack that there could have been trouble between Plaintiff and Warren and did not take steps to protect Plaintiff.[11] Accordingly, the Court will address the merits of Plaintiff's claim against Goodman.

### Dillman

With respect to Plaintiff's claim against Dillman, Plaintiff has exhausted his administrative remedies. In his grievance concerning Dillman, Plaintiff alleges that Dillman saw Plaintiff being attacked and did not appropriately respond to stop it. [Doc. 41-3 at 7.] These facts also form the basis of his allegations against Dillman in Plaintiff's Complaint. [Doc. 1.] Thus, Plaintiff has sufficiently exhausted his administrative remedies with respect to this claim, and the Court will address the merits of this claim.

**Merits of Exhausted Claims**

### Failure to Protect

---

[11]The undersigned notes whether Plaintiff's allegation that Goodman should have been aware on the day of the hearing that Plaintiff was in danger of an attack by Warren was exhausted is a close call. However, out of an abundance of caution and liberally construing a pro se plaintiff's filings, the Court will consider this claim against Goodman exhausted.

Plaintiff alleges Goodman and Dillman failed to protect Plaintiff from the assault by Warren in that Goodman failed to separate Plaintiff and Warren before the attack and Dillman failed to react appropriately when he observed Warren assault Plaintiff.  [Doc. 1.] Defendants argue that there is no evidence that Plaintiff's constitutional rights were violated. [Doc. 41-1 at 19–25.]  The Court agrees Defendants are entitled to summary judgment with respect to the claim against Dillman but not Goodman.

The Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). The United States Supreme Court and the Fourth Circuit Court of Appeals have rejected a negligence standard in determining deliberate indifference.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner*, 927 F.2d 1312, 1315–17 (4th Cir. 1991).  Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation.  *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*).  A plaintiff must allege facts to show he was exposed to a substantial risk of serious harm in that if nothing was done he was almost certain to face serious injury at the hands of other inmates.  *See Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (noting that the Eight Amendment protects against risk of future harm

17

that is "'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers'" (citation omitted)).

> *Dillman*

Here, Plaintiff has failed to provide sufficient evidence that Dillman exhibited deliberate or callous indifference for Plaintiff's safety. Plaintiff alleges that Dillman did not protect him by failing to stop the fight with Warren sooner. Specifically, Plaintiff contends that Dillman observed Warren assaulting Plaintiff, entered the cell, then left the cell and locked the door; failed to make any attempt to administer chemical munitions or call for backup; told Warren and Plaintiff to "break it up"; and eventually called first response after being told what to do by other inmates. [Doc. 1 at 4.] In support of his allegations, Plaintiff provides his own affidavit and the sworn statement of inmate Stanley Oliver ("Oliver") and declaration of inmate Fred Halcomb ("Halcomb") as attachments to his response in opposition to the first motion for summary judgment.[12] [Docs. 30-1–30-3.]

Plaintiff's alleged facts in support of his failure to protect claim do not rise to the level of a constitutional violation. In defining the concept of deliberate indifference, courts have recognized that although it is closely associated with gross negligence, there is a significant distinction. *See Doe v. N.Y. City Dep't of Soc. Servs.*, 649 F.2d, 134, 143 (2d Cir. 1981). "[G]ross negligence is the breach of reasonable standards of conduct posing obvious dangers to others while deliberate indifference involves a knowing lack of regard or concern for the safety of others." *Jensen v. Conrad*, 570 F.Supp 114, 122 (D.S.C. June 16, 1983).

---

[12]Plaintiff incorporates some of the arguments and attachments from his response in opposition to the first motion for summary judgment in his response in opposition to the second motion for summary judgment. [Doc. 50 at 9–10.] Accordingly, the Court will refer to both documents where appropriate.

With respect to a plaintiff in governmental care or custody, deliberate indifference can be exhibited by showing that a prison supervisor knew of a pervasive risk of harm to the prisoner and acted wantonly, or obdurately in preventing such harm. *Moore*, 927 F.2d at 1315.  A government official may be grossly negligent by inadvertently exposing an individual placed in his care to obvious and extreme dangers; however, "unless that official was actually aware of the dangers involved and failed to act to provide reasonable protection due to a conscious lack of concern for the individual's safety, the official did not act with deliberate indifference." *Jensen*, 570 F.Supp. at 122.

The Fourth Circuit Court of Appeals has found that an unreasonable delay in stopping a fight between inmates can give rise to a constitutional violation. *Kartman v. Markle*, 582 Fed.App'x 151 (4th Cir. 2014) (unpublished table decision).  However, the facts in that case are distinguishable from the facts in the present case.  In *Kartman*, the plaintiff alleged that a prison guard stood and watched "for what seemed like a long time" while he was pummeled, kicked, and punched by other inmates; the plaintiff further alleged that the guard later told the plaintiff that he wanted "to see how [the plaintiff] could fight." *Id.* at 154; *see also Smith v. Mesinger*, 293 F3d 641, 650 (3rd Cir. 2002) (finding that a genuine issue of material fact existed with respect to a deliberate indifference for failure to intervene claim when a plaintiff alleged that a prison guard failed to stop an attack on an inmate by several other prison guards "if the corrections officer had a reasonable opportunity to intervene and simply refused to do so").  Further, the defendants in *Kartman* did not provide any evidence contradicting the plaintiff's version of events.  582 Fed.App'x at 154.

In the present case, Plaintiff has not alleged that Dillman failed to act at all, and the evidence presented by Plaintiff fails to establish that Dillman was unreasonably delayed in

responding to the attack. Oliver avers that he was downstairs from Plaintiff's cell and heard Dillman say outside of Plaintiff's cell "hey, stop that, don't do that." [Doc. 30-1 at 3.] Oliver states he asked Dillman what was going on and Dillman responded "he's stabbing him." [*Id.*] Oliver opines that Dillman was too calm for the situation and so he and inmate Tony Green ("Green") yelled at Dillman to call first response. [*Id.*] Oliver states he then went back to the day room to be locked in and observed several officers open the door to Plaintiff and Warren's cell and administer their munitions. [*Id.*] Halcomb avers that he heard Warren state, in the presence of Dillman, that Plaintiff would not "need his sheets where he was going" and that he was "gonna kill that cracker." [Doc. 30-2 at 2.] Halcomb states he chatted with Plaintiff for a short time and then went to his cell, which was downstairs from Plaintiff's cell. [*Id.* at 2–3.] He avers that he saw Dillman bang on the cell door and yell "stop doing that" and "hey he is stabbing him." [*Id.* at 3.] He further states that Oliver and Green yelled at Dillman to call first response at which point Dillman said something into his radio and shortly thereafter several officers responded to the scene. [*Id.*]

Defendants provide the affidavits of Dillman and Taylor and the incident report filed by Taylor. [Docs. 41-4; 41-8.] Dillman avers that he personally escorted and locked Plaintiff and Warren into their cell after their disciplinary hearings, and, at that time, Warren did not make any threats or comments that indicated he would harm Plaintiff. [Doc. 41-4 ¶ 4.] Further, Dillman states that approximately two minutes after Plaintiff returned to the cell, Dillman heard a commotion coming from the cell, immediately went to the cell door, and observed Warren holding down Plaintiff. [*Id.* ¶ 5.] Dillman asserts that he immediately instructed Warren to get off Plaintiff and Warren refused to comply. [*Id.*] He states that Taylor arrived at the cell within a matter of seconds and together they opened the cell door

20

and told Warren to stop. [*Id.*] Dillman states he then administered chemical munitions twice and did not observe any weapon. [*Id.* ¶¶ 5–6.] Dillman avers that the first responders were called and Warren gave himself up. [*Id* ¶ 7.] Dillman states that the entire incident happened in one minute, that he acted in accordance with his training, and that he does not believe he could have done anything differently to either prevent the fight or stop it sooner. [*Id.* ¶ 8.] Taylor avers that, on the day of the attack, he and Dillman heard a loud noise coming from Plaintiff and Warren's cell. [Doc. 41-8 ¶ 2.] He states that Dillman immediately approached the cell and called Taylor for help; they found Plaintiff and Warren wrestling, opened the door, and ordered them to stop. [*Id.* ¶ 3.] Taylor contends he observed Warren remove an object from his pants and stab Plaintiff. [*Id.*] Taylor avers he administered chemical munitions twice and then Dillman administered chemical munitions. [*Id.* ¶¶ 3–4.] Taylor states Jenkins arrived and they called for first responders, however, because Warren still had a weapon they waited outside of the cell. [*Id.* ¶ 4.] Taylor avers that the entire incident happened within a few seconds. [*Id.* ¶ 7.] Taylor avers that his incident report was filled out within an hour of the incident. [*Id.* ¶ 6.]

Construing all inferences and ambiguities in Plaintiff's favor, neither Oliver nor Halcomb proffer any evidence that Dillman could have responded to the incident sooner. Both state that they were a floor below Plaintiff and Warren's cell and do not contend that they could see into the cell. Neither are in a position to state that there was an earlier opportunity to intervene, particularly when all parties agree that Warren was armed inside the cell. Moreover, Oliver and Halcomb aver that Dillman told Warren to stop what he was doing in a voice loud enough for them to hear from the floor below; Halcomb even states that Dillman was shouting. Both also seem to agree with Taylor and Dillman that all of these

events took place in a fairly limited time frame.[13]  Accordingly, Plaintiff has failed to provide

facts sufficient to support his assertion, and summary judgment is appropriate with respect

to Plaintiff's failure to protect claim against Dillman.[14]

          *Goodman*

          Regarding Plaintiff's claim that Goodman knew Plaintiff was in danger of attack by

Warren before he allowed Plaintiff and Warren to be locked in a cell together, the Court finds

that Plaintiff has established a genuine issue of material fact exists with respect to his claim

of deliberate indifference to safety.  Defendants have provided the affidavits of Jenkins, who

avers that he did not hear Warren make any threats toward Plaintiff at any time before,

during, or after the disciplinary hearing [Doc. 41-5 ¶ 3], and Patterson, who states that

Warren did not appear upset at the conclusion of the disciplinary hearing and did not make

any threats toward Plaintiff [Doc. 41-7 ¶ 5].  Further, in his affidavit, Goodman avers that

neither Warren nor Plaintiff made any threats toward each other before, during, or after the

disciplinary hearing, and before the date of the hearing, he had not observed any conditions

that would have led him to believe that they were in fear of each other.  [Doc. 41-2 ¶¶ 3, 5.]

---

[13]Plaintiff alleges in his Complaint that Dillman waited at least two minutes to call for first responders after he had been told what to do by Oliver and Green [Doc. 1 at 4]; however, Plaintiff's conclusory allegations, without more, are insufficient to preclude granting the summary judgment motion, *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989).

[14]In his response in opposition to the first motion for summary judgment, Plaintiff appears to allege for the first time that Dillman was deliberately indifferent to his safety because he told Plaintiff that he had heard Warren make a direct threat against Plaintiff and still locked them in the cell together.  [Doc. 30 at 2, 6.]  However, because new matters cannot be raised in a response in opposition to a motion for summary judgment, *Temple v. Oconee Cty.*, C/A No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *13 (D.S.C. Sept. 8, 2014) (citing *White v. Roche Biomedical Labs.*, 807 F.Supp. 1212, 1216 (D.S.C. 1992)), the Court will not address this argument.

However, in his Complaint, Plaintiff alleges that Goodman told him that Warren had stated he would stab Plaintiff if he returned to their shared cell and that Goodman laughed about it.  [Doc. 1 at 3–5.]  Moreover, in Oliver's affidavit, he avers that he heard Goodman say to Plaintiff, "[Y]ou know [Warren] probably going to try to stab you, you know he likes to play with them knives."  [Doc. 30-1 at 2.]

The Court find Plaintiff's allegations and evidence has provided sufficient evidence to create a question of material fact.   Accordingly, summary judgment should be denied with respect to this claim.

### Lost Property

Plaintiff contends that "a long list" of his personal property went missing as a result of Goodman's failure to properly secure his property.  [Doc. 1 at 5.]  Plaintiff requests reimbursement or replacement of his lost property.  [*Id.*]  Defendants argue that Plaintiff has not alleged a constitutional claim for his lost property.  [Doc. 41-1 at 29–30.]  The Court agrees Defendants are entitled to summary judgment with respect to this claim.

As an initial matter, the Court notes that Plaintiff has failed to respond to Defendants' argument that they are entitled to summary judgment regarding this claim in any of his responsive documents to Defendants' first or second motions for summary judgment.  [*See* Docs. 30, 50, 54.]  Plaintiff has submitted no evidence or argument in response to show why Defendants' motion should not be granted.  *Cf. Coker v. Int'l Paper Co.*, C/A No. 2:08-1865-DCN, 2010 WL 1072643 at * 2 (D.S.C. Mar.18, 2010) ("[A] plaintiff can abandon claims by failing to address them in response to a summary judgment motion."); *Jones v. Danek Med., Inc.*, C/A No. 4:96-3323-12, 1999 WL 1133272, at *3 (D.S.C. Oct. 12, 1999) ("The failure of a party to address an issue raised in summary judgment may be considered a waiver or

23

abandonment of the relevant cause of action"). However, in light of Plaintiff's pro se status, the undersigned will evaluate Plaintiff's claim based on the evidence provided.

"The Due Process Clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 327 (1986); *see also Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) (citing *Daniels*, 474 U.S. at 327). The Supreme Court has held that an intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a "meaningful postdeprivation remedy for loss is available." *Hudson v. Palmer*, 468 U.S. 517, 553 (1984). In South Carolina, prisoners may bring an action in the state courts for recovery of personal property against officials who deprive them of property without proper authorization. *See McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (citing S.C. Code Ann. § 15-69-10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." *McIntyre*, 784 F.2d at 567 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). Accordingly, because Plaintiff has made no indication that he is bringing this claim pursuant to the South Carolina Tort Claims Act and deprivations of personal property are not actionable under § 1983, summary judgment is appropriate with respect to this claim.

**Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would

24

have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).  For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that

it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations with respect to Dillman fail to demonstrate Defendant violated Plaintiff's constitutional rights. Therefore, Dillman is entitled to qualified immunity.  With respect to Goodman , the facts are in dispute as to whether he knew Plaintiff was in danger of attack and was deliberately indifferent in failing to protect him. Because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny is inappropriate as well regarding Plaintiff's claim against Goodman.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED in part and DENIED in part.  If this Report and Recommendation is adopted by the District Judge, it is also recommended counsel be appointed for Plaintiff for the trial of this action.[15]

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

January 11, 2016
Greenville, South Carolina

---

[15]Plaintiff has previously moved this Court to appoint counsel.  [Doc. 21.]

26